RHONDA LEE      : NUMBER: _577079 · C_

   Plaintiff       :

             :

VERSUS         : 1st JUDICIAL DISTRICT COURT

             :

KTBS, LLC        : CADDO PARISH, LOUISIANA

             :

    Defendant     :

## PETITION

Plaintiff RHONDA LEE, through undersigned counsel, brings this civil action against KTBS and represents the following:

PGS __10__ EXH _____ MIN __✓__
CC __/__ CP ____ MAIL ____ N/J ____
INDEX __2__ REC____ FAX ____
W/D DOC ____ CERT MAIL ____
SERVICE __/ C·T__

### PARTIES

1.  Plaintiff is:

  **RHONDA LEE** ("Lee" or "Plaintiff"), a person of the full age of majority and a resident of the State of Louisiana, Caddo Parish, Louisiana.

2.  Made Defendant herein is:

  **KTBS, LLC** ("KTBS" or "Defendant"), a limited liability company, authorized to do and doing business in the state of Louisiana, who may be served through its registered agent, Edwin W. Wray, 312 East Kings Highway, Shreveport, LA 71104.

### PERSONAL JURISDICTION

3.  Defendant has systemic and continuous contact with the State of Louisiana, Parish of Caddo. Further, Defendant has purposefully directed their activities at residents of the State of Louisiana and this civil action results from damages that arise out of or relate to those activities. Therefore, this Court has "general jurisdiction" over Defendant for all matters in which it is a party and "specific jurisdiction" over Defendant for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this civil action.

### SUBJECT MATTER JURISDICTION

4.  This Court has subject matter jurisdiction over all claims asserted in this Petition. This petition does not assert any claim arising under, or seek relief pursuant to, federal law. Rather, this Petition asserts claims solely arising under, and seeks relief pursuant to, Louisiana law. As such, this Court has exclusive jurisdiction over all matters related to this lawsuit.

### VENUE

5.  The events and omission giving rise to this civil action occurred within Caddo Parish, Louisiana. Therefore, venue for this civil action is proper in this Court.

$ __300__ FILED

MAY 28 2014

COLYN ROBERSON
CADDO DEPUTY CLERK OF COURT

2818

_Allison Jones_

## BACKGROUND

6.      Plaintiff started working with the Defendant on January 16, 2012, as a meteorologist, anchor, weather reporter, an on-air performer and multi media talent. Prior to her employment and during her interview with her soon to be supervisor, Randy Bain, Plaintiff was informed that Defendant KTBS was the "white station" in the Ark-La-Tex area and intended to remain that way. Despite this statement, Plaintiff was hired and entered into an Employment Agreement dated January 18, 2012.

7.      From the time of her employment up to October of 2013, Plaintiff, at all times, received exemplary job reviews. Despite being told that KTBS promotes from within, promotional opportunities arose, but Plaintiff was denied these promotions that were instead given to outside white male applicants. Plaintiff questioned this hiring with her supervisor, Mr. Bain.

8.      On October 6, 2013, during a routine review of Defendant's Facebook page, Plaintiff came across a post by a viewer, dated October 1, 2012. This racially charged remark commented about Plaintiff's short natural hairstyle and referred to Plaintiff as the "black lady that does the news". The viewer suggested that Plaintiff should "wear a wig or grown [sic] some more hair."

9.      Plaintiff politely responded to the post, stating, "I'm sorry you don't like my ethnic hair. And no I don't have cancer... I am very proud of my African-American ancestry which includes my hair." Plaintiff forwarded a copy of her response to her supervisor, Randy Bain, and General Manager, George Sirven, inquiring if she could block the offending commenter from further posting to avoid bad public relations for the station, as she found the viewer's post to be racially offensive and discriminatory.

10.      Several days later, Plaintiff was called into a meeting with Mr. George Sirven, who (i) informed Plaintiff that he did not agree with Plaintiff's complaint of racial discrimination, and (ii) reprimanded her and told her that she should have just thanked the viewer for watching KTBS.

11.      Eventually, the viewer apologized to Plaintiff via another Facebook post and called KTBS' manager to express his regret over his original post.

12.      Soon after this meeting, Mr. Adam Berheit, Defendant's social media monitor, sent out a company-wide e-mail, asking all employees to watch for viewer questions on

Defendant's Facebook page and respond "as needed". The email was intended to increase Defendant KTBS' responsiveness and presence in the community.

13. On November 15, 2013, Plaintiff saw a comment by a viewer, who felt like the "3 Minute Smile" contest, sponsored by Defendant, was "rigged", as the winners were all African-American children.

14. Per Mr. Berheit's instruction, Plaintiff responded that winners were selected at random, rather than by race, closing the response by wishing the viewer a happy holiday. Plaintiff's similarly situated, white co-worker, Chrissie Coile, also responded to a similar post, noting that winners were selected at random, rather than by race.

15. Ninety minutes after Plaintiff responded to the comment, Plaintiff was called into a meeting with her supervisor, Mr. Bain, who questioned Plaintiff regarding her post. Plaintiff responded that she was following Mr. Berheit's instructions to respond to Facebook messages.

16. Mr. Bain told Plaintiff that she was violating company "social media policy." When questioned as to what "social media policy" existed, Mr. Bain was unable to produce any such policy. Plaintiff was never made aware of any policy regarding social media, other than her one meeting with Mr. Sirven, that she initiated as a complaint of race discrimination, and Mr. Berheit's subsequent email, directing responses to Facebook posts "as needed".

17. Plaintiff requested a meeting with George Sirven, General Manager, to clarify company's alleged social media policy, however she was not awarded such a meeting.

18. On November 28, 2012, Plaintiff was terminated, allegedly for repeatedly violating the Defendant's written social media policy.

19. During the meeting where Plaintiff was terminated, Mr. Bain told Plaintiff that she was an exemplary employee and was only being fired because of her response to the viewer post on Facebook regarding the "3 Minute Smile" contest.

20. Another employee, Mr. Chris Redford, a white male, who opposed an anti-gay, hateful remarks in a similar manner on Facebook, was also fired the same day. Plaintiff questioned Mr. Bain regarding the discriminatory nature of these actions and opposed the same. Notwithstanding her opposition, Plaintiff's employment was terminated.

21. Following Plaintiff's termination of employment, both Mr. Bain and Mr. Sirven issued public statements that Plaintiff was terminated for *"repeated* violations of station's *written* procedure"* and stating further that Plaintiff was let go for *repeatedly* violating that [written]

procedure and after being warned *multiple* times of the consequence if her behavior continued" (emphasis added). Such public statements are untrue.

## COUNT I – VIOLATION LOUISIANA EMPLOYMENT DISCRIMINATION LAW

22.     During the course of her employment with Defendant, Plaintiff was denied promotions and/or job opportunities due to race.

23.     Plaintiff reported racial discrimination that she believed she was experiencing to management. She further opposed discrimination and/or participated in the opposition to discrimination she witnessed occurring against herself and other African American employees of Defendant.

24.     On November 28, 2012, Plaintiff's employment was terminated for reasons which were untrue and pretextual and which were, in fact, due to Plaintiff's race (African American) and/or in retaliation for Plaintiff's opposition to racial discrimination and other illegal acts.

25.     The actions, conduct and procedures of Defendant complained of herein constitutes purposeful discrimination against Plaintiff based upon her race and/or in retaliation for opposition to discrimination in violation of La. R.S. 23:301 *et. seq.* and La. R.S. 51:2256 and 23:967 as detailed below.

## COUNT II – VIOLATION OF LOUISIANA WHISTLEBLOWER STATUTE

26.     Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

27.     The Louisiana "whistleblower" statute, La. R.S. 23:967, provides that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law... [the employee] objects to or refuses to participate in an employment act or practice that is in violation of law." La. R.S. 23:967(A)(3).  The statute defines "reprisal" to include termination of employment or any discriminatory action the court finds was taken as result of an action by the employee that is protected under the statute. Statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

28.     Within the meaning of La. R.S. 23:967, Lee, in good faith, advised the Defendant that an employment act or practice violated applicable law, *viz.*, racial discrimination.

29.     Within the meaning of La. R.S. 23:967, Lee, objected to, or refused to participate in, an employment act or practice that was in violation of law, *viz.*, racial discrimination.

30. Within the meaning of La. R.S. 23:967, as a result of Lee's advice to her employer of the violation of law and her good faith objection to, or refusal to participate in, an employment act or practice that is in violation of law, the Defendant KTBS engaged in "reprisal" against Lee, including the termination of her employment and other discriminatory action. To be clear, Lee was fired because of her knowledge of an illegal workplace practice and/or her refusal to participate in the practice, opposition to the same, or intention to report it. *Kite v. Kite Bros.,* 74 So.3d 1266, 1271 (La.App.3rd Cir. 2011).

31. Defendant KTBS terminated the employment of Lee because of her refusal to violate applicable law, including her refusal accept racial discrimination.

32. As a result of the Defendant's actions, including their violations of the provisions of La. R.S. 23:967, Plaintiff has been injured and has suffered or incurred damages and is entitled to recover statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

33. As a result of the Defendant's actions complained of herein, the Defendant is liable for damages resulting to Plaintiff from the violation of the Louisiana Whistleblower Statute, La. R.S. 23:967, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

35. In this case: (i) Defendant's conduct complained of herein was extreme and outrageous; (ii) the emotional distress suffered by Lee was severe; and (iii) KTBS desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto*, 585 So.2d 1205 (La. 1991). KTBS' actions complained of herein, including but not limited to, tolerating the use of offensive racial slurs, prejudicial stereotypes and insults, were outrageous in character and extreme in degree, because said actions and conduct were atrocious and egregious and went "beyond all possible bounds of decency" and were "regarded as atrocious and utterly intolerable in a civilized community." *Arledge v. Sherrill*, 738 So.2d 1215, (La.App.2nd Cir. 1999).

36. The extreme and outrageous conduct of KTBS complained of herein was done in a willful and wanton manner, and constituted a disregard for the rights and well being of the

Plaintiff and were substantially certain to cause Plaintiff severe emotional distress.

37.    As a direct and proximate result of KTBS' actions complained of herein, Plaintiff has been injured and has suffered severe emotional distress and is entitled to recover for the injuries, offenses and damages to be proved at trial.

38.    The conduct of KTBS complained of herein, directly and/or proximately caused Plaintiff to suffer severe and painful injuries and damages which presently include, but are not limited to:

    a.  Severe emotional distress, mental anguish, embarrassment, humiliation;

    b.  physical pain and suffering;

    c.  past medical expenses;

    d.  future medical expenses;

    e.  loss of enjoyment of life;

    f.  loss of earnings and/or earning capacity; and

    g.  all other elements of damages and injuries, as may be shown at the trial of this matter.

## COUNT IV– DEFAMATION

39.    Lee reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

40.    Under Louisiana law, "defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139-140 (La. 2004).  A statement is "defamatory" if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Id.* In Louisiana, "defamatory words" have traditionally been divided into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 674-75 (La. 2006). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se*. *Id.*  When a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Wood v. Del Giorno*, 974 So.2d 95, 99 (La.App. 4th Cir. 2007).

41.     Following the termination of her employment, as described in detailed above: (i) KTBS uttered false and defamatory words concerning Lee, *viz.*, informing the public that she had repeatedly violated a written social media policy, which in fact, no such policy existed and she had not violated any policy; (ii) KTBS published these statements to third parties (iii) KTBS made those statements with malice; and (iv) KTBS' statements resulted in injury to Lee.

42.     KTBS' statements are defamatory *per se* because those words tend to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Alternatively, KTBS' words are susceptible of a defamatory meaning.

43.     As a direct and proximate result of the actions of KTBS complained of herein, including the use and publication of KTBS' defamatory words, Lee has been injured and has suffered damages and is entitled to recover for the injuries, offenses and damages, in an amount to be proved at trial.

44.     The conduct of KTBS complained of herein, directly and/or proximately caused Lee to suffer severe and painful injuries and damages which presently include, but are not limited to:

    g.  keen mental anguish, embarrassment, humiliation and emotional distress;

    h.  physical pain and suffering;

    i.  past medical expenses;

    j.  future medical expenses;

    k.  loss of enjoyment of life;

    l.  loss of earnings and/or earning capacity; and

    g.  all other elements of damages and injuries, as may be shown at the trial of this matter.

## JURY TRIAL DEMANDED

Plaintiff is are entitled to, and hereby demand, a trial by jury as to all matters permitted by law.

WHEREFORE, Plaintiff seeks judgment in their favor against Defendant, as set forth above, for:

    a.  An award of monetary damages for all claims, in an amount to be shown at trial;

Respectfully submitted,

DAVIDSON, JONES & SUMMERS
A Professional Law Corporation
509 Market Street, Suite 1000
Shreveport, Louisiana 71101
Phone: (318) 424-4342
Fax: (318) 226-0168

Allison A. Jones, Bar No. 16990

By: _____
ATTORNEYS FOR PLAINTIFF

Date: May 28, 2014

**PLEASE SERVE**:

Edwin W. Wray
KTBS
312 East Kings Highway
Shreveport, LA 71104

9

## VERIFICATION

STATE OF LOUISIANA
PARISH OF CADDO

    I, Rhonda Lee, being first duly sworn, depose and say that I am a Plaintiff and I have read the attached petition and hereby declare and verify the statements set forth in the foregoing petition are true to the best of my information, knowledge and belief.

By: _____
            Rhonda Lee

Subscribed and sworn to before me
this 28th   day of May 2014.

_____
        Notary Public

ALLISON A. JONES, NOTARY PUBLIC
LA. BAR ROLL NO. 16990
CADDO PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

RHONDA LEE                                    : NUMBER: _575079 . C_

        Plaintiff                             :
                                              :
VERSUS                                        : 1st JUDICIAL DISTRICT COURT
                                              :
KTBS, LLC                                     : CADDO PARISH, LOUISIANA
                                              :
        Defendant                             :

## FIRST AMENDED PETITION

Plaintiff RHONDA LEE, through undersigned counsel, brings this civil action against KTBS and represents the following:

### PARTIES

1.     Plaintiff is:

**RHONDA LEE** ("Lee" or "Plaintiff"), a person of the full age of majority and a resident of the State of Louisiana, Caddo Parish, Louisiana.

2.     Made Defendant herein is:

**KTBS, LLC** ("KTBS" or "Defendant"), a limited liability company, authorized to do and doing business in the state of Louisiana, who may be served through its registered agent, Edwin W. Wray, 312 East Kings Highway, Shreveport, LA 71104.

### PERSONAL JURISDICTION

3.     Defendant has systemic and continuous contact with the State of Louisiana, Parish of Caddo. Further, Defendant has purposefully directed their activities at residents of the State of Louisiana and this civil action results from damages that arise out of or relate to those activities. Therefore, this Court has "general jurisdiction" over Defendant for all matters in which it is a party and "specific jurisdiction" over Defendant for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this civil action.

### SUBJECT MATTER JURISDICTION

4.     This Court has subject matter jurisdiction over all claims asserted in this Petition. This petition does not assert any claim arising under, or seek relief pursuant to, federal law. Rather, this Petition asserts claims solely arising under, and seeks relief pursuant to, Louisiana law. As such, this Court has exclusive jurisdiction over all matters related to this lawsuit.

### VENUE

5.     The events and omission giving rise to this civil action occurred within Caddo Parish, Louisiana. Therefore, venue for this civil action is proper in this Court.

PGS _9_ EXH _____ MIN _____
CC _1_ CP _____ MAIL _____ N/J _____
INDEX _____ REC _____ FAX _____
W/D DOC _____ RPT MAIL _____
SERVICE _____

$ _150_ **FILED**
MAY 3 0 2014
COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

## BACKGROUND

6.      Plaintiff started working with the Defendant on January 16, 2012, as a meteorologist, anchor, weather reporter, an on-air performer and multi media talent. Prior to her employment and during her interview with her soon to be supervisor, Randy Bain, Plaintiff was informed that Defendant KTBS was the "white station" in the Ark-La-Tex area and intended to remain that way. Despite this statement, Plaintiff was hired and entered into an Employment Agreement.

7.      From the time of her employment up to October of 2012, Plaintiff, at all times, received exemplary job reviews. Despite being told that KTBS promotes from within, promotional opportunities arose, but Plaintiff was denied these promotions that were instead given to outside white male applicants. Plaintiff questioned this hiring with her supervisor, Mr. Bain.

8.      On October 6, 2012, during a routine review of Defendant's Facebook page, Plaintiff came across a post by a viewer, dated October 1, 2012. This racially charged remark commented about Plaintiff's short natural hairstyle and referred to Plaintiff as the "black lady that does the news". The viewer suggested that Plaintiff should "wear a wig or grown [sic] some more hair."

9.      Plaintiff politely responded to the post, stating, "I'm sorry you don't like my ethnic hair. And no I don't have cancer... I am very proud of my African-American ancestry which includes my hair." Plaintiff forwarded a copy of her response to her supervisor, Randy Bain, and General Manager, George Sirven, inquiring if she could block the offending commenter from further posting to avoid bad public relations for the station, as she found the viewer's post to be racially offensive and discriminatory.

10.     Several days later, Plaintiff was called into a meeting with Mr. George Sirven, who (i) informed Plaintiff that he did not agree with Plaintiff's complaint of racial discrimination, and (ii) reprimanded her and told her that she should have just thanked the viewer for watching KTBS.

11.     Eventually, the viewer apologized to Plaintiff via another Facebook post and called KTBS' manager to express his regret over his original post.

12.     Soon after this meeting, Mr. Adam Berheit, Defendant's social media monitor, sent out a company-wide e-mail, asking all employees to watch for viewer questions on

2

Defendant's Facebook page and respond "as needed". The email was intended to increase Defendant KTBS' responsiveness and presence in the community.

13. On November 15, 2012, Plaintiff saw a comment by a viewer, who felt like the "3 Minute Smile" contest, sponsored by Defendant, was "rigged", as the winners were all African-American children.

14. Per Mr. Berheit's instruction, Plaintiff responded that winners were selected at random, rather than by race, closing the response by wishing the viewer a happy holiday. Plaintiff's similarly situated, white co-worker, Chrissie Coile, also responded to a similar post, noting that winners were selected at random, rather than by race.

15. Ninety minutes after Plaintiff responded to the comment, Plaintiff was called into a meeting with her supervisor, Mr. Bain, who questioned Plaintiff regarding her post. Plaintiff responded that she was following Mr. Berheit's instructions to respond to Facebook messages.

16. Mr. Bain told Plaintiff that she was violating company "social media policy." When questioned as to what "social media policy" existed, Mr. Bain was unable to produce any such policy. Plaintiff was never made aware of any policy regarding social media, other than her one meeting with Mr. Sirven, that she initiated as a complaint of race discrimination, and Mr. Berheit's subsequent email, directing responses to Facebook posts "as needed".

17. Plaintiff requested a meeting with George Sirven, General Manager, to clarify company's alleged social media policy, however she was not awarded such a meeting.

18. On November 28, 2012, Plaintiff was terminated, allegedly for repeatedly violating the Defendant's written social media policy.

19. During the meeting where Plaintiff was terminated, Mr. Bain told Plaintiff that she was an exemplary employee and was only being fired because of her response to the viewer post on Facebook regarding the "3 Minute Smile" contest.

20. Another employee, Mr. Chris Redford, a white male, who opposed an anti-gay, hateful remarks in a similar manner on Facebook, was also fired the same day. Plaintiff questioned Mr. Bain regarding the discriminatory nature of these actions and opposed the same. Notwithstanding her opposition, Plaintiff's employment was terminated.

21. Following Plaintiff's termination of employment, both Mr. Bain and Mr. Sirven issued public statements that Plaintiff was terminated for "*repeated* violations of station's *written* procedure" and stating further that Plaintiff was let go for *repeatedly* violating that [written]

procedure and after being warned *multiple* times of the consequence if her behavior continued"
(emphasis added). Such public statements are untrue. These statements were and have continued
to be made on a repeated basis when KTBS has been questioned regarding the termination of
Ms. Lee's employment.

### COUNT I – VIOLATION LOUISIANA EMPLOYMENT DISCRIMINATION LAW

22.     During the course of her employment with Defendant, Plaintiff was denied
promotions and/or job opportunities due to race.

23.     Plaintiff reported racial discrimination that she believed she was experiencing to
management. She further opposed discrimination and/or participated in the opposition to
discrimination she witnessed occurring against herself and other African American employees of
Defendant.

24.     On November 28, 2012, Plaintiff's employment was terminated for reasons which
were untrue and pretextual and which were, in fact, due to Plaintiff's race (African American)
and/or in retaliation for Plaintiff's opposition to racial discrimination and other illegal acts.

25.     The actions, conduct and procedures of Defendant complained of herein
constitutes purposeful discrimination against Plaintiff based upon her race and/or in retaliation
for opposition to discrimination in violation of La. R.S. 23:301 *et. seq.* and La. R.S. 51:2256 and
23:967 as detailed below.

### COUNT II – VIOLATION OF LOUISIANA WHISTLEBLOWER STATUTE

26.     Plaintiff reasserts and realleges the allegations contained in the foregoing
paragraphs as though fully restated herein.

27.     The Louisiana "whistleblower" statute, La. R.S. 23:967, provides that "an
employer shall not take reprisal against an employee who in good faith, and after advising the
employer of the violation of law... [the employee] objects to or refuses to participate in an
employment act or practice that is in violation of law." La. R.S. 23:967(A)(3).   The statute
defines "reprisal" to include termination of employment or any discriminatory action the court
finds was taken as result of an action by the employee that is protected under the statute.
Statutory damages include compensatory damages, back pay, benefits, special damages,
reinstatement, and reasonable attorney fees resulting from the reprisal.

28.     Within the meaning of La. R.S. 23:967, Lee, in good faith, advised the Defendant
that an employment act or practice violated applicable law, *viz.,* racial discrimination.

4

29.   Within the meaning of La. R.S. 23:967, Lee, objected to, or refused to participate in, an employment act or practice that was in violation of law, *viz.*, racial discrimination.

30.   Within the meaning of La. R.S. 23:967, as a result of Lee's advice to her employer of the violation of law and her good faith objection to, or refusal to participate in, an employment act or practice that is in violation of law, the Defendant KTBS engaged in "reprisal" against Lee, including the termination of her employment and other discriminatory action. To be clear, Lee was fired because of her knowledge of an illegal workplace practice and/or her refusal to participate in the practice, opposition to the same, or intention to report it. *Kite v. Kite Bros.*, 74 So.3d 1266, 1271 (La.App.3rd Cir. 2011).

31.   Defendant KTBS terminated the employment of Lee because of her refusal to violate applicable law, including her refusal accept racial discrimination. Defendant KTBS additionally continued to defame and slander Plaintiff because of her refusal to violate applicable law, and this conduct continues to date.

32.   As a result of the Defendant's actions, including their violations of the provisions of La. R.S. 23:967, Plaintiff has been injured and has suffered or incurred damages and is entitled to recover statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

33.   As a result of the Defendant's actions complained of herein, the Defendant is liable for damages resulting to Plaintiff from the violation of the Louisiana Whistleblower Statute, La. R.S. 23:967, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.   Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

35.   In this case: (i) Defendant's conduct complained of herein was extreme and outrageous; (ii) the emotional distress suffered by Lee was severe; and (iii) KTBS desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto*, 585 So.2d 1205 (La. 1991). KTBS' actions complained of herein, including but not limited to, tolerating the use of offensive racial slurs, prejudicial stereotypes and insults, were outrageous in character and extreme in degree, because said actions and conduct were atrocious and egregious and went "beyond all

5

possible bounds of decency" and were "regarded as atrocious and utterly intolerable in a civilized community." *Arledge v. Sherrill*, 738 So.2d 1215, (La.App.2nd Cir. 1999).

36.    The extreme and outrageous conduct of KTBS complained of herein was done in a willful and wanton manner, and constituted a disregard for the rights and well being of the Plaintiff and were substantially certain to cause Plaintiff severe emotional distress.

37.    As a direct and proximate result of KTBS' actions complained of herein, Plaintiff has been injured and has suffered severe emotional distress and is entitled to recover for the injuries, offenses and damages to be proved at trial.

38.    The conduct of KTBS complained of herein, directly and/or proximately caused Plaintiff to suffer severe and painful injuries and damages which presently include, but are not limited to:

   a.   Severe emotional distress, mental anguish, embarrassment, humiliation;

   b.   physical pain and suffering;

   c.   past medical expenses;

   d.   future medical expenses;

   e.   loss of enjoyment of life;

   f.   loss of earnings and/or earning capacity; and

   g.   all other elements of damages and injuries, as may be shown at the trial of this matter.

### COUNT IV– DEFAMATION

39.    Lee reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

40.    Under Louisiana law, "defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139-140 (La. 2004). A statement is "defamatory" if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Id.* In Louisiana, "defamatory words" have traditionally been divided into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 674-75 (La. 2006). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or

professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se*. *Id*. When a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Wood v. Del Giorno*, 974 So.2d 95, 99 (La.App. 4th Cir. 2007).

41.    Following the termination of her employment, as described in detailed above: (i) KTBS uttered false and defamatory words concerning Lee, *viz*., informing the public that she had repeatedly violated a written social media policy, which in fact, no such policy existed and she had not violated any policy; (ii) KTBS published these statements to third parties (iii) KTBS made those statements with malice; and (iv) KTBS' statements resulted in injury to Lee. This conduct is continuing to date.

42.    KTBS' statements are defamatory *per se* because those words tend to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Alternatively, KTBS' words are susceptible of a defamatory meaning.

43.    As a direct and proximate result of the actions of KTBS complained of herein, including the use and publication of KTBS' defamatory words, Lee has been injured and has suffered damages and is entitled to recover for the injuries, offenses and damages, in an amount to be proved at trial.

44.    The conduct of KTBS complained of herein, directly and/or proximately caused Lee to suffer severe and painful injuries and damages which presently include, but are not limited to:

        g.    keen mental anguish, embarrassment, humiliation and emotional distress;

        h.    physical pain and suffering;

        i.    past medical expenses;

        j.    future medical expenses;

        k.    loss of enjoyment of life;

        l.    loss of earnings and/or earning capacity; and

        g.    all other elements of damages and injuries, as may be shown at the trial of this matter.

**PREREQUISITES**

7

Plaintiff timely filed a charge with the Louisiana Commission on Human Rights and has sent a thirty (30) day demand letter as required by applicable state law. All administrative prerequisites have been met under La. R.S. 23:303(c) and the suit is timely under La. R.S. 23:303(d).

## JURY TRIAL DEMANDED

Plaintiff is are entitled to, and hereby demand, a trial by jury as to all matters permitted by law.

WHEREFORE, Plaintiff seeks judgment in their favor against Defendant, as set forth above, for:

    a.      An award of monetary damages for all claims, in an amount to be shown at trial;

    b.      An award of damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life and consequential loses;

    c.      An award for any and all legal and/or equitable relief, including attorney's fees and costs, to which she may be entitled and for all statutory damages arising under La. R.S. 23:301 *et. seq.*, La. R.S. 51:2556, La. R.S. 23:967, and La. Civ. Code Art. 2315, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal;

    d.      An award for interest on any awards, at the highest rate allowed by law, from the date of judicial demand until the date paid;

    e.      For trial by jury for those matters triable to a jury; and

    f.      Such other and further relief as the Court finds equitable, just and proper.

Respectfully submitted,

DAVIDSON, JONES & SUMMERS
A Professional Law Corporation
509 Market Street, Suite 1000
Shreveport, Louisiana 71101
Phone: (318) 424-4342
Fax: (318) 226-0168

Allison A. Jones, Bar No. 16990

By: _____
        ATTORNEYS FOR PLAINTIFF

Date: May 30, 2014

**PLEASE SERVE**:

Edwin W. Wray
KTBS
312 East Kings Highway
Shreveport, LA 71104

9

RHONDA LEE

        Plaintiff

VERSUS

KTBS, LLC

        Defendant

: NUMBER: 577079-C
:
:
:
:
: 1ˢᵗ JUDICIAL DISTRICT COURT
:
: CADDO PARISH, LOUISIANA
:
:

## SECOND AMENDED PETITION

    Plaintiff RHONDA LEE, through undersigned counsel, brings this civil action against KTBS and represents the following:

## PARTIES

1.    Plaintiff is:

    **RHONDA LEE** ("Lee" or "Plaintiff"), a person of the full age of majority, who at the time of the initial filing of this lawsuit was a resident of the State of Louisiana, Caddo Parish, Louisiana, but who now resides in Aurora, Colorado.

2.    Made Defendant herein is:

    **KTBS, LLC** ("KTBS" or "Defendant"), a limited liability company, authorized to do and doing business in the state of Louisiana, who may be served through its registered agent, Edwin W. Wray, 312 East Kings Highway, Shreveport, LA 71104.

## PERSONAL JURISDICTION

3.    Defendant has systemic and continuous contact with the State of Louisiana, Parish of Caddo. Further, Defendant has purposefully directed its activities at residents of the State of Louisiana and this civil action results from damages that arise out of or relate to those activities. Therefore, this Court has "general jurisdiction" over Defendant for all matters in which it is a party and "specific jurisdiction" over Defendant for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this civil action.

## SUBJECT MATTER JURISDICTION

4.    This Court has subject matter jurisdiction over all claims asserted in this Petition.

## VENUE

5.    The events and omission giving rise to this civil action occurred within Caddo Parish, Louisiana. Therefore, venue for this civil action is proper in this Court.

PGS ___ EXH ___ WIN ___
CC ___ CF ___ MAIL ___ N/J ___
INDEX ___ REC ___ FAX ___
W/D DOC ___ CERT MAIL ___
SERVICE ___

$ 150.00 FILED

SEP 1 9 2014

JIM SCOTT
CADDO DEPUTY CLERK OF COURT

## BACKGROUND

6.     Plaintiff started working with the Defendant on January 16, 2012, as a meteorologist, anchor, weather reporter, an on-air performer and multi media talent. Prior to her employment and during her interview with her soon to be supervisor, Randy Bain, Plaintiff was informed that Defendant KTBS was the "white station" in the Ark-La-Tex area and intended to remain that way. Despite this statement, Plaintiff was hired and entered into an Employment Agreement.

7.     From the time of her employment up to October of 2012, Plaintiff, at all times, received exemplary job reviews. Despite being told that KTBS promotes from within, promotional opportunities arose, but Plaintiff was denied these promotions that were instead given to outside white male applicants. Plaintiff questioned this hiring with her supervisor, Mr. Bain.

8.     On October 6, 2012, during a routine review of Defendant's Facebook page, Plaintiff came across a post by a viewer, dated October 1, 2012. This racially charged remark commented about Plaintiff's short natural hairstyle and referred to Plaintiff as the "black lady that does the news". The viewer suggested that Plaintiff should "wear a wig or grown [sic] some more hair."

9.     Plaintiff politely responded to the post, stating, "I'm sorry you don't like my ethnic hair. And no I don't have cancer... I am very proud of my African-American ancestry which includes my hair." Plaintiff forwarded a copy of her response to her supervisor, Randy Bain, and General Manager, George Sirven, inquiring if she could block the offending commenter from further posting to avoid bad public relations for the station, as she found the viewer's post to be racially offensive and discriminatory.

10.     Several days later, Plaintiff was called into a meeting with Mr. George Sirven, who (i) informed Plaintiff that he did not agree with Plaintiff's complaint of racial discrimination, and (ii) reprimanded her and told her that she should have just thanked the viewer for watching KTBS.

11.     Eventually, the viewer apologized to Plaintiff via another Facebook post and called KTBS' manager to express his regret over his original post.

12.     Soon after this meeting, Mr. Adam Berheit, Defendant's social media monitor, sent out a company-wide e-mail, asking all employees to watch for viewer questions on

2

Defendant's Facebook page and respond "as needed". The email was intended to increase
Defendant KTBS' responsiveness and presence in the community.

13.     On November 15, 2012, Plaintiff saw a comment by a viewer, who felt like the "3
Minute Smile" contest, sponsored by Defendant, was "rigged", as the winners were all African-
American children.

14.     Per Mr. Berheit's instruction, Plaintiff responded that winners were selected at
random, rather than by race, closing the response by wishing the viewer a happy holiday.
Plaintiff's similarly situated, white co-worker, Chrissie Coile, also responded to a similar post,
noting that winners were selected at random, rather than by race.

15.     Ninety minutes after Plaintiff responded to the comment, Plaintiff was called into
a meeting with her supervisor, Mr. Bain, who questioned Plaintiff regarding her post. Plaintiff
responded that she was following Mr. Berheit's instructions to respond to Facebook messages.

16.     Mr. Bain told Plaintiff that she was violating company "social media policy."
When questioned as to what "social media policy" existed, Mr. Bain was unable to produce any
such policy. Plaintiff was never made aware of any policy regarding social media, other than her
one meeting with Mr. Sirven, that she initiated as a complaint of race discrimination, and Mr.
Berheit's subsequent email, directing responses to Facebook posts "as needed".

17.     Plaintiff requested a meeting with George Sirven, General Manager, to clarify
company's alleged social media policy, however she was not awarded such a meeting.

18.     On November 28, 2012, Plaintiff was terminated, allegedly for repeatedly
violating the Defendant's written social media policy.

19.     During the meeting where Plaintiff was terminated, Mr. Bain told Plaintiff that
she was an exemplary employee and was only being fired because of her response to the viewer
post on Facebook regarding the "3 Minute Smile" contest.

20.     Another employee, Mr. Chris Redford, a white male, who opposed an anti-gay,
hateful remarks in a similar manner on Facebook, was also fired the same day. Plaintiff
questioned Mr. Bain regarding the discriminatory nature of these actions and opposed the same.
Notwithstanding her opposition, Plaintiff's employment was terminated.

21.     Following Plaintiff's termination of employment, both Mr. Bain and Mr. Sirven
issued public statements that Plaintiff was terminated for "*repeated* violations of station's *written*
procedure" and stating further that Plaintiff was let go for *repeatedly* violating that [written]

3

procedure and after being warned *multiple* times of the consequence if her behavior continued" (emphasis added). Such public statements are untrue. These statements were and have continued to be made on a repeated basis when KTBS has been questioned regarding the termination of Ms. Lee's employment, and in fact, continue to the date.

### COUNT I – VIOLATION OF EMPLOYMENT DISCRIMINATION LAW

22.     During the course of her employment with Defendant, Plaintiff was denied promotions and/or job opportunities due to race.

23.     Plaintiff reported racial discrimination that she believed she was experiencing to management. She further opposed discrimination and/or participated in the opposition to discrimination she witnessed occurring against herself and other African American employees of Defendant.

24.     On November 28, 2012, Plaintiff's employment was terminated for reasons which were untrue and pretextual and which were, in fact, due to Plaintiff's race (African American) and/or in retaliation for Plaintiff's opposition to racial discrimination and other illegal acts.

25.     The actions, conduct and procedures of Defendant complained of herein constitutes purposeful discrimination against Plaintiff based upon her race and/or in retaliation for opposition to discrimination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e, La. R.S. 23:301 *et. seq.* and La. R.S. 51:2256 and 23:967 as detailed below.

### COUNT II – VIOLATION OF LOUISIANA WHISTLEBLOWER STATUTE

26.     Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

27.     The Louisiana "whistleblower" statute, La. R.S. 23:967, provides that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law... [the employee] objects to or refuses to participate in an employment act or practice that is in violation of law." La. R.S. 23:967(A)(3). The statute defines "reprisal" to include termination of employment or any discriminatory action the court finds was taken as result of an action by the employee that is protected under the statute. Statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

28.     Within the meaning of La. R.S. 23:967, Lee, in good faith, advised the Defendant that an employment act or practice violated applicable law, *viz.*, racial discrimination.

4

29.     Within the meaning of La. R.S. 23:967, Lee, objected to, or refused to participate in, an employment act or practice that was in violation of law, *viz.*, racial discrimination.

30.     Within the meaning of La. R.S. 23:967, as a result of Lee's advice to her employer of the violation of law and her good faith objection to, or refusal to participate in, an employment act or practice that is in violation of law, the Defendant KTBS engaged in "reprisal" against Lee, including the termination of her employment and other discriminatory action. To be clear, Lee was fired because of her knowledge of an illegal workplace practice and/or her refusal to participate in the practice, opposition to the same, or intention to report it. *Kite v. Kite Bros.*, 74 So.3d 1266, 1271 (La.App.3rd Cir. 2011).

31.     Defendant KTBS terminated the employment of Lee because of her refusal to violate applicable law, including her refusal accept racial discrimination. Defendant KTBS additionally continued to defame and slander Plaintiff because of her refusal to violate applicable law, and this conduct continues to date.

32.     As a result of the Defendant's actions, including their violations of the provisions of La. R.S. 23:967, Plaintiff has been injured and has suffered or incurred damages and is entitled to recover statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

33.     As a result of the Defendant's actions complained of herein, the Defendant is liable for damages resulting to Plaintiff from the violation of the Louisiana Whistleblower Statute, La. R.S. 23:967, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.     Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

35.     In this case: (i) Defendant's conduct complained of herein was extreme and outrageous; (ii) the emotional distress suffered by Lee was severe; and (iii) KTBS desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto*, 585 So.2d 1205 (La. 1991). KTBS' actions also complained of herein, including but not limited to, tolerating the use of offensive racial slurs, prejudicial stereotypes and insults, were outrageous in character and extreme in degree, because said actions and conduct were atrocious and egregious and went

"beyond all possible bounds of decency" and were "regarded as atrocious and utterly intolerable in a civilized community." *Arledge v. Sherrill*, 738 So.2d 1215, (La.App.2nd Cir. 1999). KTBS's actions also include issuing false public statements that Plaintiff was terminated for "*repeated* violations of station's *written* procedure" and stating further that Plaintiff was let go for *repeatedly* violating that [written] procedure and after being warned *multiple* times of the consequence if her behavior continued, which conduct continues to date.

36.     The extreme and outrageous conduct of KTBS complained of herein was done in a willful and wanton manner, and constituted a disregard for the rights and well being of the Plaintiff and were substantially certain to cause Plaintiff severe emotional distress.

37.     As a direct and proximate result of KTBS' actions complained of herein, Plaintiff has been injured and has suffered severe emotional distress and is entitled to recover for the injuries, offenses and damages to be proved at trial.

38.     The conduct of KTBS complained of herein, directly and/or proximately caused Plaintiff to suffer severe and painful injuries and damages which presently include, but are not limited to:

      a.   Severe emotional distress, mental anguish, embarrassment, humiliation;

      b.   physical pain and suffering;

      c.   past medical expenses;

      d.   future medical expenses;

      e.   loss of enjoyment of life;

      f.   loss of earnings and/or earning capacity; and

      g.   all other elements of damages and injuries, as may be shown at the trial of this matter.

## COUNT IV– DEFAMATION

39.     Lee reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

40.     Under Louisiana law, "defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139-140 (La. 2004).  A statement is "defamatory" if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Id.* In Louisiana,

"defamatory words" have traditionally been divided into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. *Kennedy v. Sheriff of East Baton Rouge,* 935 So.2d 669, 674-75 (La. 2006). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se. Id.* When a plaintiff proves publication of words that are defamatory *per se,* the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Wood v. Del Giorno,* 974 So.2d 95, 99 (La.App. 4th Cir. 2007).

    41.    Following the termination of her employment, as described in detailed above: (i) KTBS uttered false and defamatory words concerning Lee, *viz.,* informing the public that she had repeatedly violated a written social media policy, which in fact, no such policy existed and she had not violated any policy; (ii) KTBS published these statements to third parties (iii) KTBS made those statements with malice; and (iv) KTBS' statements resulted in injury to Lee. This conduct is continuing to date.

    42.    KTBS' statements are defamatory *per se* because those words tend to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Alternatively, KTBS' words are susceptible of a defamatory meaning.

    43.    As a direct and proximate result of the actions of KTBS complained of herein, including the use and publication of KTBS' defamatory words, Lee has been injured and has suffered damages and is entitled to recover for the injuries, offenses and damages, in an amount to be proved at trial.

    44.    The conduct of KTBS complained of herein, directly and/or proximately caused Lee to suffer severe and painful injuries and damages which presently include, but are not limited to:

        g.   keen mental anguish, embarrassment, humiliation and emotional distress;

        h.   physical pain and suffering;

        i.   past medical expenses;

        j.   future medical expenses;

        k.   loss of enjoyment of life;

        l.   loss of earnings and/or earning capacity; and

g.  all other elements of damages and injuries, as may be shown at the trial of this matter.

## PREREQUISITES

Plaintiff timely filed a charge with the Louisiana Commission on Human Rights and has sent a thirty (30) day demand letter as required by applicable state law. Plaintiff also timely filed a charge with the Equal Employment Opportunity Commission and has received a Notice of Right to Sue. All administrative prerequisites have been met under Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e, La. R.S. 23:303(c) and the suit is timely under La. R.S. 23:303(d).

## JURY TRIAL DEMANDED

Plaintiff is are entitled to, and hereby demand, a trial by jury as to all matters permitted by law.

WHEREFORE, Plaintiff seeks judgment in their favor against Defendant, as set forth above, for:

a.  An award of monetary damages for all claims, in an amount to be shown at trial;

b.  An award of damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life and consequential loses;

c.  An award for any and all legal and/or equitable relief, including attorney's fees and costs, to which she may be entitled and for all statutory damages arising under Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e, La. R.S. 23:301 *et. seq.*, La. R.S. 51:2556, La. R.S. 23:967, and La. Civ. Code Art. 2315, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal;

d.  An award for interest on any awards, at the highest rate allowed by law, from the date of judicial demand until the date paid;

e.  For trial by jury for those matters triable to a jury; and

f.  Such other and further relief as the Court finds equitable, just and proper.

Respectfully submitted,

DAVIDSON, JONES & SUMMERS
A Professional Law Corporation
509 Market Street, Suite 1000
Shreveport, Louisiana 71101
Phone: (318) 424-4342
Fax: (318) 226-0168

Allison A. Jones, Bar No. 16990

By: _____
ATTORNEYS FOR PLAINTIFF

Date: September 19, 2014

**PLEASE SERVE**:

KTBS
through Price S. Barker
Kean Miller
333 Texas Street, Suite 450
Shreveport, Louisiana 71101

9